UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-222-GWU

BOBBY THACKER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

    impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

 Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Bobby Thacker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative joint disease with chronic low back pain and hypertension.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Thacker retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 21-6).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 40 to 42, high school education, and work experience as an operator of a continuous miner could perform any jobs if he were limited to lifting 50 pounds occasionally and 25 pounds frequently and could only occasionally climb a ladder.  (Tr. 46-7).  The VE responded that there were jobs that such a person could perform and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 47-8).

7

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Thacker alleged disability beginning June 3, 2006 because of back pain, cardiovascular problems, and nerves. (Tr. 94). He testified that he had uncontrolled hypertension and headaches, and took nitroglycerin for chest pains. (Tr. 34-5). He had decided to stop working because of weakness and dizzy spells. (Tr. 33). He had been hospitalized for chest pain, most recently in 2006, and as of the December 13, 2007 hearing had used nitroglycerin a dozen times. (Tr. 38). He also described shortness of breath for which he used an inhaler, which was helpful. (Tr. 44-5). His back problem limited his lifting to 5 or 10 pounds and he could only sit or stand for approximately two hours with difficulty. (Tr. 42-3). He had been prescribed medication for his nerve condition but his physician had not referred him for mental health treatment. (Tr. 36-7).

Medical evidence in the transcript shows that Mr. Thacker was treated for hypertension well before he stopped working. (E.g., Tr. 162-6, 207). More recent office notes appear to indicate that with blood pressure medication, his readings were much improved, although still somewhat high. (E.g., Tr. 256, 291). He went to the emergency room at Pikeville Medical Center on several occasions, including October, 2004, at which time laboratory studies were abnormal but an emergency

cardiac catheterization showed no evidence of obstructive coronary artery disease. (Tr. 252-3). He was discharged in stable condition. An echocardiogram soon after showed an injection fraction of 60 percent, modest aortic insufficiency and hypertrophy, while a Holter monitor showed that his heart had sinus rhythm with some rare pre-ventricular contractions. (Tr. 247-9). Mr. Thacker was admitted to the hospital on March 26, 2005 with a complaint of chest pain, but testing showed no acute changes on an EKG, x-ray, or in his cardiac enzymes. (Tr. 244-5, 271-2). There is apparently no discharge summary from this visit, but in any case, the plaintiff returned to work for over a year. Mr. Thacker's 2006 admission occurred on June 18, but he was discharged the same day from the emergency room denying any chest pain or back pain and stating that he was feeling much better. (Tr. 256).

The plaintiff's treating cardiologist in 2004 and 2005 was Dr. Ahmed Malik. He reported from December, 2006 that Mr. Thacker's diagnosis was chest pain, without evidence of obstructive coronary artery disease, and hypertension. (Tr. 234). His condition was stable from a cardiac standpoint as of his last visit in April, 2005.

Dr. Mansoor Mahmood served as Mr. Thacker's family physician but while he diagnosed hypertension and back pain, his office notes consist of little more than a form indicating that straight leg raising was positive, along with a checkmark

indicating that his lumbar paravertrebral muscles were abnormal. (E.g., Tr. 207, 283-9). Dr. Mahmood obtained an MRI of the lumbosacral spine in October, 2005, which was interpreted as showing a mild bulge at two levels, but no evidence of herniation or spinal stenosis. (Tr. 205). More recently, the plaintiff sought treatment from Dr. Bret Dunning, describing hypertension, although he was out of medications, and depression over his mother's recent death. (Tr. 294). Dr. Dunning noted normal muscle strength, elevated blood pressure and a labile mood, and prescribed high blood pressure medications and Paxil. (Id.). On follow-up two weeks later, Mr. Thacker's blood pressure and mood had both improved.

None of the treating or examining sources provided any functional restrictions. The ALJ's hypothetical factors are consistent with the findings of non-examining state agency physicians Carlos Hernandez and Timothy Gregg, who reviewed the record on August 29, 2006 and November 8, 2006, respectively. (Tr. 191-7, 225-31). Dr. Gregg commented that the current evidence did not show that Mr. Thacker's degenerative disc disease had caused any bladder or bowel dysfunction, and while he had stated that he had difficulty walking due to pain, no ambulatory aid had been prescribed. His hypertension was controlled with medication, and his breathing was within normal limits.

The plaintiff's only argument on appeal is that because some of the evidence was submitted after the most recent state agency physician rendered an opinion,

that it does not constitute substantial evidence. However, as pointed out in the Applicable Law section of this opinion, it is the plaintiff's responsibility to prove his own case. In the absence of an opinion from an examining or treating source, the ALJ could reasonably have relied on the reviewing physicians' opinions, even if they did not see every piece of evidence. Essentially, the plaintiff failed to carry his burden of proof.

The decision will be affirmed.

This the 30th day of September, 2009.

**Signed By:**
**G. Wix Unthank**
**United States Senior Judge**